William B. Cudlip and Lynwood B. Cudlip, Husband and Wife v. Commissioner.
Cudlip v. Commissioner
Docket No. 40606.
United States Tax Court
1953 Tax Ct. Memo LEXIS 65; 12 T.C.M. (CCH) 1290; T.C.M. (RIA) 53355; November 10, 1953
Edward L. Weber, Esq., 800 National Bank, Detroit, Mich., for the petitioners. R. G. de Quevedo, Esq., for the respondent. WITHEY
Memorandum Findings of Fact and Opinion WITHEY, Judge: The Commissioner determined a deficiency in income tax of the petitioners for the year 1949 in the sum of $12,160.38. The sole question for our determination is whether the Commissioner correctly determined that the sum of $30,000 which petitioner William B. Cudlip paid as a guarantor of certain corporate indebtedness *66 is not deductible as a business had debt but should properly be treated as a non-business bad debt. Findings of Fact Certain of the facts have been stipulated and are so found. William B. Cudlip (hereinafter for convenience referred to as petitioner) and Lynwood B. Cudlip, petitioners, are husband and wife who resided during the taxable year 1949 in Grosse Pointe Shores, Wayne County, Michigan. They filed a joint income tax return for the taxable year 1949 with the collector of internal revenue for the district of Michigan. Petitioner is a member of the law firm of Dickinson, Wright, Davis, McKean & Cudlip of Detroit, Michigan. He became associated with that firm shortly after graduation from law school in 1926 and has continued as a member of the firm ever since. Petitioner's law firm has represented the National Bank of Detroit, Michigan, since the bank was commenced approximately 20 years ago and was general counsel to the bank during the taxable year 1949. Petitioner's activities as a lawyer involved mainly problems of banking and corporations. Through contracts made by him as a lawyer he became interested in many business ventures, often being a corporate director or officer *67 therein. In nearly all instances his law firm became legal adviser to these business ventures. Petitioner together with a group of some seven or eight men has been for a number of years interested in business ventures of various kinds and particularly in the organizing, promoting and development thereof, in which petitioner has consistently rendered personal services to that end apart from his activities as a member of the law firm. Because of his bank connections acquired by him as a lawyer he was able to arrange financing for many of the business ventures. WiRecorder Corporation (hereinafter referred to as WiRecorder) was one of the business ventures in which petitioner was interested. It was incorporated under the laws of the State of Michigan on June 14, 1944. Its capital consisted of $5,000 of cash paid in for its stock. The capital stock was issued 167 shares to Donald B. McLough, 167 shares to Merlin A. Cudlip, a relative of petitioner, and 166 shares to petitioner. At the time of its dissolution in December 1949 the stockholders of WiRecorder were as follows: Shares
Donald B. McLough
167
Merlin A. Cudlip
84
Elizabeth S. Cudlip
83
William B. Cudlip
83
Lynwood B. Cudlip
83
Samuel B. and Jennie Young
25
Bertha C. Cudlip
21
Amelia R. Sherwood
25
Edward Moultane
21
Cornelia McLouth
25
Margaret Buchanan
25
Helen McLaughlin
25
Mortimer A. Neff
50
W. P. Haboush
11
Total
728
*68 At the time WiRecorder was incorporated its sole asset other than the cash paid in for its capital stock was a license agreement secured from Armour Research Foundation to manufacture and use products adapting the principles of recording sound on wire and tape to the automotive and other fields under Armour patents. Under the license agreement WiRecorder was required to advance to Armour $10,000 as a prepayment of royalties, and in addition thereto to spend or cause to be spent not less than $25,000 each year for three years in research work to further the perfection and exploitation of devices licensed under the agreement for use in the automobile field. If this condition were met the license in this field became exclusive. WiRecorder borrowed the $10,000 with which to prepay the royalties from the Michigan Parts Manufacturing Corporation (a partnership) giving its note therefor. This partnership was dissolved December 28, 1945, and accepted as consideration for cancellation of the $10,000 note 167 shares of WiRecorder stock. After exhausting its own funds WiRecorder borrowed the sum of $90,000 from the National Bank of Detroit giving its note therefor. By virtue of a guaranty agreement *69 executed on the 7th day of March 1947 with the National Bank of Detroit, petitioner, along with the two other incorporators of WiRecorder, guaranteed payment to the amount of $90,000 of any sums at any time thereafter due and owing the bank by WiRecorder. On March 5, 1947, petitioner had by a separate written agreement pledged to the bank as security for performance of the guaranty agreement all his property theretofore or thereafter deposited with the bank. The property referred to in the pledge agreement consisted of an assortment of common stocks owned by petitioner which he had on deposit with the National Bank of Detroit as security for borrowings that he had made from time to time. No additional property of petitioner was required to be placed on deposit by the bank in consideration of the WiRecorder loan. On November 23, 1949, after having received a notice from the bank calling for payment of its note in the amount of $90,000 principal and $600 accrued interest WiRecorder resolved to, and did, notify the bank that it was unable to meet its note obligation. It further resolved on that date that its affairs be wound up and the corporation be dissolved according to law. Accordingly, *70 the corporation's existence was terminated on December 13, 1949. On November 25, 1949, petitioner in accordance with his guaranty agreement paid the National Bank of Detroit the sum of $30,000 principal and $200 interest. After payment of the remaining balance of $60,400 by Merlin A. Cudlip and Donald B. McLouth (the other incorporators) WiRecorder's note was surrendered by the bank. By letter dated November 29, 1949, petitioner advised WiRecorder that since he had paid a portion of the corporation's debt to the National Bank of Detroit as guarantor he was subrogated to the rights of the bank and that he was lodging with the corporation his personal claim against it in the sum of $30,200, which sum he expected to be paid. No part of that sum has been paid to petitioner by WiRecorder. WiRecorder confined its efforts in the development of the Armour devices licensed under the aforesaid agreement to the making of models. Actual production of wire recorders was on a small scale and consisted mainly of the assembling of parts purchased from other manufacturing concerns. Petitioner was an officer of WiRecorder throughout its existence and was actively engaged in its affairs. He was *71 at all times pertinent hereto aware of its financial condition. In his income tax return for the taxable year 1949 he showed income from his law firm of $52,035.32. His total gross income from all sources for that year was $58,957.63. In arriving at his net income of $22,226.02 he deducted as a long-term capital loss the amount of $1,660 by reason of the worthlessness of the stock of WiRecorder. He also deducted as a business bad debt the amount of $30,000 by reason of his payment of that sum as a guarantor of the note of WiRecorder. The Commissioner in his notice of deficiency allowed as a long-term capital loss the amount of $1,660 by reason of the worthlessness of WiRecorder stock in 1949 but disallowed the deduction of $30,000 holding that the loss of that sum by petitioner was on the basis of a non-business bad debt. In promoting, organizing and financing WiRecorder Corporation during the year 1949 petitioner was not engaged in a business. Opinion Petitioner's position is that he sustained a loss of $30,000 as guarantor of a note of WiRecorder Corporation, an insolvent corporation; that the loss sustained was in connection with one of numerous business ventures carried on *72 by him, which business ventures bore a proximate relationship to his professional activity as a lawyer; that since WiRecorder was hopelessly insolvent at the time payment was made by him as guarantor of its indebtedness no debtorcreditor relationship arose, which fact requires the conclusion that the loss was incurred in connection with a transaction entered into for profit. He contends, therefore, that he sustained a fully deductible loss in the taxable year 1949 which was either a business bad debt loss or a loss sustained in connection with a transaction entered into for profit. Was a loss sustained by petitioner in a transaction entered into for profit under section 23 (e) (2)? [1] We find against the petitioner on this question. A loss within the statute is generally characterized by a lack of expectation of repayment on the part of a taxpayer. , affirmed on this point, . It is the absence of the debtor-creditor relationship which distinguishes a loss under this statute from a bad debt loss under section 23(k). [2] In this case it is clear that petitioner intended to, and did expect to, be repaid by WiRecorder *73 in the event he was at any time required to fulfill his obligation under the guaranty agreement. This is borne out by the fact that shortly after payment of the sum he here seeks to deduct he filed his written demand for repayment thereof with WiRecorder. The cases cited by petitioner for the proposition that no debt can arise where at the time of payment by a guarantor the primary debtor is insolvent are not in point. A debt arose between petitioner and WiRecorder, which was still in existence, at the time petitioner made the payment here sought to be deducted. Leo L. Pollak, 20 T.C. - No. 48. *74 Having so held, the final and decisive issue is whether the debt given rise to by petitioner's payment of WiRecorder's debt was a business or a non-business debt. There is no dispute between the parties as to the debt becoming worthless during 1949. We hold for respondent on this issue. Petitioner was a lawyer of long standing. In the tax year at issue by far the largest proportion of his income was derived from his law practice and the purchase and sale of corporate stocks. No income was realized by him in that year from promoting, organizing and financing business ventures. Indeed he here seeks to deduct a loss based on such activities offset by no income whatsoever. It is true petitioner has from time to time been engaged over a period of years in the promoting, organizing and financing of various business ventures but these were isolated transactions. No combination of such transactions constitutes a business. Nor does petitioner's active participation in the affairs of WiRecorder constitute a business. We are constrained to so hold because of the decision of the United States Supreme Court in , on facts virtually parallel to those at *75 bar on this aspect of the case. See . , reversed (C.A. 2) , cited by respondent, involves a fact situation not present here and is therefore not in point. There, ample proof was available to the court as to the extent of taxpayer's activity in the various enterprises with which he was involved, and it was clear that he was not engaged in any other primary business, while in the case at bar the profits merely indicate the names of various business ventures in which petitioner was from time to time interested in on way or another. And too, except for the general statement that he was "active" in these ventures, we have no specific evidence that he in any instance guaranteed loans to such enterprises, particularly in the year here involved. Charles G. Berwind, 20 T.C. - No. 114. Although pertinent to the issue, the fact that petitioner's law firm represented nearly all the business ventures entered into by petitioner does not alter the fact that he personally was not engaged in the business of guaranteeing the loans of WiRecorder. Indeed, this record is devoid of any indication *76 that petitioner ever guaranteed loans to any of the various business ventures with which he became involved. The Commissioner was correct in concluding that petitioner suffered a non-business bad debt loss under section 23(k)(4). Decision will be entered for the respondent. Footnotes
1. SEC. 23. DEDUCTIONS FROM GROSS INCOME. In computing net income there shall be allowed as deductions: * * *
(e) Losses by Individuals. - In the case of an individual, losses sustained during the taxable year and not compensated for by insurance or otherwise - * * *
(2) if incurred in any transaction entered into for profit, though not connected with the trade or business; or * * *↩
2. SEC. 23. DEDUCTIONS FROM GROSS INCOME. In computing net income there shall be allowed as deductions: * * *
(k) Bad Debts. - (1) General Rule. - Debts which become worthless within the taxable year; or (in the discretion of the Commissioner) a reasonable addition to a reserve for bad debts; and when satisfied that a debt is recoverable only in part, the Commissioner may allow such debt, in an amount not in excess of the part charged off within the taxable year, as a deduction. This paragraph shall not apply in the case of a taxpayer, other than a bank, as defined in section 104, with respect to a debt evidenced by a security as defined in paragraph (3) of this subsection. This paragraph shall not apply in the case of a taxpayer, other than a corporation, with respect to a non-business debt, as defined in paragraph (4) of this subsection.↩